UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

AKF INC. d/b/a FUNDKITE,

        Petitioner,

    -v-                                    No.  24-CV-2271-LTS

SKYBELL TECHNOLOGIES INC. d/b/a
SKYBELL/SKYBELL POWERING OUR
PARTNERS, RONALD G. CARRIQUES,
RTL LLC, BIG TOP TECH LLC, GEE
PARTNERSHIP HOLDINGS, LLC, LGXK
SKYBELL LLC, and DESIREE CARLEEN
MEJIA,

        Respondents.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        On February 6, 2024, AKF Inc. d/b/a FundKite ("Petitioner") initiated the instant

action by filing a verified petition to confirm an arbitration award in the Supreme Court of the

State of New York, New York County.  (Docket entry no. 1-1 (the "Petition").)  On March 26,

2024, Skybell Technologies Inc. d/b/a Skybell/Skybell Powering Our Partners ("Skybell"),

Ronald G. Carriques, RTL LLC, Big Top Tech LLC, Gee Partnership Holdings, LLC, LGXK

Skybell LLC, and Desiree Carleen Mejia (collectively, "Respondents") removed the action to

this Court pursuant to 28 U.S.C. sections 1441 and 1446.  (Docket entry no. 1 ("Notice of

Removal").)  The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1332 and

1441.

        Currently pending before the Court are the Petition itself, the motion of Petitioner

to remand the action to state court (docket entry no. 5 ("Motion to Remand")), and Respondents'

motion to vacate the arbitration award (docket entry no. 9 ("Motion to Vacate")).  The Court has

considered the parties' submissions carefully, and, for the following reasons, Petitioner's Motion to Remand is denied, Respondents' Motion to Vacate is denied, and the Petition is granted, confirming the subject arbitration award.

<u>BACKGROUND</u>

The following facts are drawn from the parties' papers and the underlying award, and are not in dispute unless otherwise noted.  On April 13, 2023, Petitioner and Skybell "agreed to enter into a non-recourse merchant cash advance transaction to purchase future receivables with a face value of $440,776.00" for a purchase price of $324,100.00, with the remaining Respondents acting as guarantors.  (Docket entry no. 9-2 ("Arbitration Award") ¶ 1.)  Skybell was required under this Revenue Purchase Agreement ("RPA") to remit a certain percentage of its future receivables[1] to Petitioner until the cash advance and any outstanding fees called for by the RPA had been paid to Petitioner in full.  (Docket entry no. 1-2 ("RPA") at 3.)  This payment was to be accomplished by depositing a specified percentage of Skybell's future receivables each week into a bank account owned by Skybell, from which Petitioner was authorized by Skybell to collect the agreed-upon payments.  (RPA at 3; <u>id.</u> § 1.1.)  Skybell "covenanted to allow [Petitioner] access to their online banking accounts and repayment through ACH debits at all times unless and until satisfaction of the Agreement ha[d] been made in-full."  (Arbitration Award ¶ 3.)

---

[1]     The agreement defines the relevant future receivables as "all of [Skybell's] future sales, accounts, contract rights and other obligations and entitlements arising from or relating to the payment of monies from [Skybell's] customers and/or third-party payers and the proceeds thereof including, but not limited to all payments made by cash, check, electronic transfer or other form of monetary payment in the course of [Skybell's] business."  (Docket entry no. 1-2 ("RPA") at 3.)

The initial remittance payment under the RPA was fixed, with Petitioner thereafter required to perform monthly reconciliations, adjusting Skybell's payments owed to track the agreed-upon percentage of Skybell's future receivables required to be remitted to Petitioner, "unless such [reconciliation] requirement [was] waived or [Skybell] fail[ed] to provide necessary documentation and information."  (Arbitration Award ¶ 21; RPA at 2-3.)  The arbitrator found that Petitioner exceeded this obligation "by providing weekly reconciliations for the periods of April 20-26, 2023 and April 27-May 3, 2023 and appl[ying] appropriate modification to the [remittance] amounts debited."  (Arbitration Award ¶ 21.)

In the event of a default, which the RPA defined to include Skybell's refusal to deliver required remittances and voluntary interruption or diversion of funds from Skybell's bank account with the intent to avoid delivering remittances to Petitioner, the full amount of outstanding remittances, "plus all fees and charges (including reasonable attorney's fees, costs and default fees)," was to become due and payable in full.  (RPA §§ 3.1-3.2.)  The RPA additionally provided for a default fee in the amount of 25 percent of the outstanding remittances.  (Id. at 22.)

Petitioner asserted that, beginning on June 2, 2023, its scheduled weekly debit of remittances from Skybell's bank account was declined due to insufficient funds.  (Arbitration Award ¶ 9; Petition ¶ 17.)  Petitioner further asserted that, "although insufficient funds do not, by itself, constitute a default under the Agreement, [Petitioner] discovered that [Skybell] did not truly lack funds to cover the amounts owed under the Agreement because [Petitioner] discovered that [Skybell] was still in business and thus generating Receipts."  (Petition ¶¶ 18-20.)  Respondents contend that Petitioner conducted "just two reconciliations" under the RPA, and that, beginning May 12, 2023, no further reconciliations were conducted and Petitioner collected

a fixed amount of $18,365.67 every week.  (Docket entry no. 10 ("Resps. Vac. Mem.") at 5;

Arbitration Award ¶ 17(c).)  Respondents further contend that Petitioner held Respondents in

default "after just three payments were returned for insufficient funds."  (Resps. Vac. Mem. at 5.)

On June 29, 2023, pursuant to the RPA's arbitration provision, Petitioner sent a

written notice of intent to arbitrate to Respondents by certified mail.  (Petition ¶ 30; docket entry

no. 9-1 ("Gold Decl.") ¶ 20.)  On June 30, 2023, Petitioner commenced a special proceeding in

the Supreme Court of the State of New York, New York County ("New York Supreme Court"),

captioned <u>AKF Inc. d/b/a FundKite v. Skybell Technologies Inc. d/b/a Skybell/Skybell Powering

Our Partners et al.</u>, Index No. 653171/2023 (N.Y. Sup. Ct. N.Y. Cty. 2023), by filing a petition

seeking a preliminary injunction to restrain Respondents' accounts pending resolution of

arbitration, and requesting a temporary restraining order granting the same relief pending the

preliminary injunction hearing.  (Gold Decl. ¶ 21.)  On October 5, 2023, the New York Supreme

Court entered an order denying the petition for injunctive relief.  (<u>See</u> docket entry no. 9-9; Gold

Dec. ¶ 26.)

On August 7, 2023, Petitioner submitted the dispute for arbitration before the

arbitrator designated under the RPA, Mediation and Civil Arbitration, Inc. d/b/a RapidRuling

(the "Arbitrator") (RPA § 4.14; Petition ¶¶ 26-27; Gold Dec. ¶ 27), asserting claims for breach of

contract as against Skybell, and breach of guarantee as against Giovanni Tomaselli

("Tomaselli"), whom Petitioner identified as "the President and Member of the board" of

Skybell, and the remaining Respondents that acted as guarantors.[2]  (Docket entry no. 9-10 ¶¶ 10,

39-53.)  On September 5, 2023, Respondents made a motion for discovery in the arbitration

---

[2]    The Arbitrator identified Tomaselli as the owner of Skybell.  (Arbitration Award ¶ 2.)
This inconsistency is immaterial for purposes of this action.

proceeding, seeking, <u>inter alia</u>, discovery to support their defense that Petitioner "routinely does not reconcile" as contractually obligated; the motion was denied by the Arbitrator as not relevant to the events concerning the dispute submitted to arbitration.  (Docket entry no. 9-12 at 1; docket entry no. 9-13 ¶ 5.)  The arbitration hearing was held on January 16, 2024.  (Arbitration Award ¶ 2.)

On January 19, 2024, the Arbitrator issued an award in favor of Petitioner in the amount of $360,540.08, plus costs and post-judgment interest.  (<u>Id.</u> ¶¶ 2, 24, 26; <u>id.</u> at 11.) Specifically, the Arbitrator found that Petitioner asserted, and Respondents failed to deny, that Petitioner contacted Respondents in early May of 2023 to notify Respondents of "observed transactions showing Respondents' events of breach," at which point Petitioner alleged, and Respondents failed to deny, that Respondents agreed to "novate" the RPA "to negate the reconciliation provision and agree to a weekly payment in the amount of $18,365.67 (the original estimated amount)."  (<u>Id.</u> ¶¶ 7, 11, 21.)  The Arbitrator further found that the repeated declination of Petitioner's debits due to insufficient funds constituted breach "under . . . the novation."  (<u>Id.</u> ¶¶ 7, 11, 23(f) n.2, 24.)

The Arbitrator found that Tomaselli was not liable (<u>id.</u> ¶ 19), but otherwise rejected Respondents' defenses to Petitioner's claims, including the defense that the RPA constituted a "criminally usurious and unenforceable" loan under New York state law (<u>id.</u> ¶¶ 18(e), 23), and the assertion that Petitioner "breached the Agreement by failing to provide mandatory reconciliations," reasoning that the novation "negated the requirement for reconciliation," which novation the Arbitrator found Respondents had "opted" not to rebut, (<u>id.</u> ¶¶ 18(c), 21).

On February 6, 2024, Petitioner initiated a second action in New York Supreme

Court, captioned <u>AKF, Inc. d/b/a FundKite v. Skybell Technologies Inc. d/b/a Skybell/Skybell Powering Our Partners et al.</u>, Index No. 650658/2024 (N.Y. Sup. Ct. N.Y. Cty. 2023), by filing a verified petition to confirm the Arbitration Award pursuant to New York State Civil Practice Law and Rules ("CPLR") section 7510.  (<u>See</u> Petition; Notice of Removal ¶ 1.)  On February 21, 2024, the New York Supreme Court entered an order to show cause as to why judgment confirming the Arbitration Award should not be entered, directing that Petitioner effect service of the Petition and order to show cause on Respondents by certified mail, and setting a briefing schedule.  (Docket entry no. 1-12.)  On March 6, 2024, Petitioner filed an affidavit of service, affirming that service had been effected by sending copies of the requisite filings by certified mail to Respondents and Tomaselli.[3]  (Docket entry no. 1-14.)

Pursuant to 28 U.S.C. sections 1441 and 1446, Respondents removed the second action to this Court by filing the Notice of Removal on March 26, 2024.  (<u>See</u> Notice of Removal at 1.)  Petitioner thereafter filed the pending Motion to Remand, Respondents filed the Motion to Vacate, and this case was transferred to the undersigned.

<u>DISCUSSION</u>

Because the Motion to Remand challenges this Court's jurisdiction, the Court must address it first, before turning to the Motion to Vacate.  <u>See</u> <u>Bank of N.Y. v. Bank of Am.</u>, 861 F. Supp. 225, 227-28 (S.D.N.Y. 1994) (finding that plaintiffs' contention that the court lacked subject matter jurisdiction over removed action must be reviewed before any other matter "because fundamental principles of American jurisprudence forbid the Court from acting in the absence of subject matter jurisdiction" (citations omitted)).

---

[3]      Tomaselli was not named as a Respondent in the second action.  (<u>See</u> <u>generally</u> Petition.)

Motion to Remand

A defendant in a state court action may remove a matter to federal district court if the district court has original jurisdiction over the action. 28 U.S.C.A. § 1441(a) (Westlaw through P.L. 119-1). As relevant here, a defendant or defendants seeking to remove a civil action from state court must file a notice of removal in federal court "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based," and all properly joined defendants must join or consent to removal. 28 U.S.C.A. § 1446(b) (Westlaw through P.L. 119-1). For the purposes of removal, federal law determines "who is plaintiff and who is defendant," and a state's "procedural provisions cannot govern the privilege of removal granted by federal statute." Chicago, R. I. & P. R. Co. v. Stude, 346 U.S. 574, 580 (1954). Rather, the propriety of removal "is a question of the construction of the federal statute on removal[.]" Id.

Within 30 days of the notice of removal being filed in federal court, a plaintiff may file a motion to remand the case to state court. 28 U.S.C.A. § 1447(c) (Westlaw through P.L. 119-1). Moreover, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the case must be remanded. Id. On a motion to remand, "the defendant bears the burden of demonstrating the propriety of removal." Cal. Pub. Emps. Ret. Sys. v. Worldcom, Inc., 368 F.3d 86, 100 (2d Cir. 2004).

Petitioner first argues that this Court has no jurisdiction over the removed action, contending that adjudication of the petition would violate CPLR section 7502(a)(iii), which provides that, "[n]otwithstanding the entry of judgment, all subsequent applications shall be made by motion in the special proceeding or action in which the first application was made." (Docket entry no. 5 ("Pet. Remand Mem.") at 2-3.) Because Petitioner initiated this proceeding

as a second state court action, rather than filing its petition to confirm the Arbitration Award under the index number of the first state action it initiated, Petitioner argues, CPLR section 7502 precludes this Court from exercising removal jurisdiction.  (Id.)  Respondents counter that federal removal jurisdiction is governed by federal law, specifically, 28 U.S.C. section 1446, and that, in any event, the commencement of a separate confirmation proceedings is not a barrier under New York law: "Where a Petitioner brings a new proceeding to confirm an arbitration award instead of a motion in the prior proceeding . . . Courts will disregard the defect and allow the new action to proceed."  (Docket entry no. 8 ("Resps. Remand Mem.") at 3-4 (citing In re Long Beach Pro. Firefighters Assn. v. City of Long Beach, 214 A.D.3d 735, 736 (N.Y. App. Div. 2nd Dep't 2023); In re Wicks Constr., Inc. v. Green, 295 A.D.2d 527, 528 (N.Y. App. Div. 2nd Dep't 2002)).)

        Respondents are correct.  The right of removal is "entirely a creature of [federal] statute," which may not be constrained by New York state procedural law.  Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002); Stude, 346 U.S. at 580.  Here, Petitioner does not contend that Respondents have failed to comply with the provisions of 28 U.S.C. section 1441 et seq., and there is no procedural or jurisdictional defect apparent on the face of the notice of removal.  (See generally Notice of Removal (removing pursuant to 28 U.S.C. §§ 1441 and 1446, and asserting jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)).)  Furthermore, as Respondents note, even New York courts have found it proper to overlook failures to comply with CPLR section 7502(a)(iii).  In re Long Beach Pro. Firefighters Assn., 214 A.D.3d at 736 (finding that, although motion to confirm arbitration should have been brought in prior proceeding pursuant to CPLR § 7502(a)(iii), New York State Supreme Court had properly disregarded that defect pursuant to CPLR § 103(c)); In re Wicks Constr., Inc., 295 A.D.2d at 528

(same).  Petitioner's jurisdictional arguments premised on CPLR section 7502(a) are therefore

unavailing.

        Petitioner next argues that the removal was untimely, because "it is apparent that

Respondents are removing this case because they defaulted under the deadlines set by the State

Court to oppose Petitioner's motion to confirm the arbitration award obtained by Petitioner

against Respondents," and "removal will be considered untimely if the movant has removed a

case to avoid the consequences of its actions in state court."  (Docket entry no. 7 ("Pet. Supp.

Mem.") at 1 (citing <u>LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.</u>, 31 F.3d 70, 72 (2d

Cir. 1994), and <u>Pan Atl. Grp., Inc. v. Republic Ins. Co.</u>, 878 F. Supp. 630, 640 (S.D.N.Y. 1995),

for the proposition that removal is untimely where the underlying state court had substantially

adjudicated a proceeding prior to it being removed to federal court).)  Respondents dispute this

proposition, arguing that "[w]here, as here, an application for injunctive relief in aid of

arbitration was decided and the case was not removed until a subsequent application was made to

confirm an arbitration award, remand [has been] denied."  (Resps. Remand Mem. at 4 (citing

<u>LGC Holdings, Inc. v. Julius Klein Diamonds, LLC</u>, 238 F. Supp. 3d 452, 463-464 (S.D.N.Y.

2017).)  Respondents also contend that no substantive issues were adjudicated in the first state

court action, further supporting a finding that removal here was timely.  (Resps. Remand Mem.

at 4-5.)

        The case law cited by Petitioner and Respondents is inapposite, because those

decisions concerned the proper interpretation of 9 U.S.C. section 205 ("Section 205"), which

governs removal of cases from state courts where the subject matter relates to an arbitration

agreement or award falling under the Convention on the Recognition and Enforcement of

Foreign Arbitral Awards (the "Convention").  <u>See</u> 9 U.S.C.A. § 203 (Westlaw through P.L. 119-

1) (providing independent jurisdictional basis for an action or proceeding falling under the Convention).  The particular issue before those courts was whether the removing parties had complied with Section 205's requirement that removal take place "at any time before the trial" of a state court action or proceeding that relates to an arbitration agreement or award falling under the Convention; no such language appears in the general removal procedures provided for by 28 U.S.C. sections 1441 and 1446.[4]  See LaFarge, 31 F.3d at 71-73; Pan Atl. Group, 878 F. Supp. 638-39; LGC Holdings, Inc., 238 F. Supp. 3d at 461-64; see also Banco de Santander Cent. Hispano, S.A. v. Consalvi Int'l Inc., 425 F. Supp. 2d 421, 427 (S.D.N.Y. 2006) (explaining key differences between Section 205 and 28 U.S.C. § 1441, including the removal "at any time before the trial" language in Section 205).

　　　　Because neither party has here invoked the Convention, and it does not appear from the parties' papers that the Arbitration Award would fall under the Convention, the timing constraints of Section 205 have no bearing on the timeliness of Respondents' removal of the instant action.  (See generally Notice of Removal (citing the removal provisions of 28 U.S.C. sections 1441 and 1446)); see also 9 U.S.C.A § 202 (Westlaw through P.L. 119-1) (providing that, where an arbitration agreement or award arises out of a legal relationship which is entirely between citizens of the United States, such agreement or award "shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states").  Respondents have met the 30-day deadline for removal under 28 U.S.C. section 1446(b), and the removal is therefore timely.  (Notice of Removal ¶¶ 1-4, 28; Resps. Remand

---

[4]　　　　Similar language appears in 28 U.S.C. § 1441(e), governing multiparty, multiforum jurisdiction, which is also inapplicable in the instant case.

Mem. at 3.)

Having found that this action was properly removed to this Court pursuant to 28 U.S.C. sections 1441 and 1446, the Court turns to the merits of Respondents' Motion to Vacate.

Motion to Vacate

Respondents move to vacate the Arbitration Award under both Section 10 of the Federal Arbitration Act ("FAA"), and CPLR section 7511. (See Motion to Vacate.) A threshold issue for this Court is which of the two standards governs the Motion to Vacate, in view of the fact that (1) Petitioner moved to confirm the Arbitration Award in state court pursuant to CPLR section 7510 (Petition at 1), and (2) the case was removed to this Court on the basis of diversity jurisdiction.[5] (Notice of Removal ¶ 16.)

The FAA applies when there is federal subject matter jurisdiction, i.e., diversity jurisdiction, see Badgerow v. Walters, 596 U.S. 1, 9 (2022), and when the contract calling for arbitration "evidence[es] a transaction involving [interstate] commerce." 9 U.S.C.A. § 2 (Westlaw through P.L. 119-1). Absent a choice-of-law provision in the underlying contract dictating that state law is to govern both the agreement and its enforcement, courts in this and other Circuits have routinely applied FAA standards in reviewing petitions to vacate and confirm arbitration awards, see, e.g., Entm't One US LP v. Robinson, No. 18-CV- 07147-AJN, 2019 WL 4640060, at *3 (S.D.N.Y. Sept. 23, 2019); Johnson v. Gruma Corp., 614 F.3d 1062, 1066-67 (9th Cir. 2010) (requiring that choice-of-law provision specifically reference state arbitration law), even where such petitions were initially filed in state court and subsequently removed to federal

---

[5]     Respondents assert in the Notice of Removal that jurisdiction is proper pursuant to both 28 U.S.C. sections 1331 and 1332(a) (Notice of Removal ¶¶ 5, 16), but point to no federal statute that would provide for jurisdiction of the Petition as filed in state court. (See generally id.) Respondents do, however, properly establish diversity jurisdiction. (Id. ¶¶ 6-8, 17-26.)

court on the basis of diversity jurisdiction.  See, e.g., McQueen-Starling v. UnitedHealth Group, Inc., 654 F. Supp. 2d 154, 163 (S.D.N.Y. 2009) (gathering case law); Shiber v. Have a Heart Compassion Care, Inc. 20-CV-05441-SVW-SHK, 2020 WL 8671896, at *3 (C.D. Cal. Oct. 14, 2020) ("[F]ederal courts routinely apply the FAA to petitions to confirm or vacate arbitration awards where the petition was originally filed in state court and subsequently removed to federal court on the basis of diversity jurisdiction." (citation omitted)).  This principle is consistent with Supreme Court precedent holding that, although the FAA preempts state laws that "'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration[,]' . . . it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself."  Volt Info. Scis. v. Bd. of Trs., 489 U.S. 468, 478-79 (1989) (citations omitted).  Rather, "parties are generally free to structure their arbitration agreements as they see fit[.]"  Id. at 479; see also Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 59 (1995) (stating in dicta that, in the absence of contractual intent to the contrary, the FAA preempts state law).  Indeed, the arbitration provision of the parties' underlying agreement, the RPA, provides that "THIS AGREEMENT TO ARBITRATE IS GOVERNED BY THE FEDERAL ARBITRATION ACT AND NOT BY ANY STATE LAW REGULATING THE ARBITRATION OF DISPUTES."  (RPA §§ 4.7, 4.14 (emphasis added).)  The Court will, accordingly, apply FAA standards in adjudicating the instant motion.

Turning, then, to the merits of the Motion to Vacate, "the role of a district court in reviewing an arbitration award [under the FAA] is 'narrowly limited' and 'arbitration panel determinations are generally accorded great deference[.]'"  Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 103 (2d Cir. 2013) (citation omitted).  Thus,

the party petitioning to vacate an award "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003). A district court will enforce an arbitration award, "despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'" Landy Michaels Realty Corp. v. Loc. 32B-32J Serv. Emps. Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992) (citation omitted).

Unless the party seeking vacatur establishes the applicability of any of the limited exceptions listed in section 10(a) of the FAA or demonstrates that vacatur is otherwise warranted under applicable case law, as explored further below, the district court must confirm the arbitration award. See Seneca Nation of Indians v. New York, 988 F.3d 618, 625 (2d Cir. 2021) (describing the current doctrine of "manifest disregard of law" as judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA); Shenzhen Lanteng Cyber Tech. Co., Ltd. v. Amazon.Com Servs., LLC, Nos. 23-7593, 23-7809, 2024 WL 4356307, at *3 (2d Cir. Oct. 1, 2024) (confirming that Second Circuit has recognized a "narrow public policy exception with respect to arbitral awards" (citation omitted)); see also Hall St. Assocs. v. Mattel, Inc. 552 U.S. 576, 584-85 (2008).

Respondents advance four bases for vacatur of the Arbitration Award, which the Court reviews in turn.

Violation of Public Policy

Respondents first argue that the Arbitration Award "contravenes the well-defined and dominant public policy against usury because it enforces a criminally usurious loan." (Resps. Vac. Mem. at 1, 11.) Respondents are correct that the Second Circuit has recognized a public policy exception with respect to arbitral awards, which is to be "construed very narrowly"

and applied "only where enforcement would violate [the court's] most basic notions of morality and justice." <u>Europcar Italia, S.p.A. v. Maiellano Tours, Inc.</u>, 156 F.3d 310, 315 (2d Cir. 1998) (internal quotation marks and citations omitted).  However, this exception only applies where <u>enforcement</u> of the arbitration award would violate public policy.  <u>Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.</u>, 49 F.4th 802, 818-19 (2d Cir. 2022).  Where, instead, "a party claims that an <u>underlying contract</u> is invalid for violating public policy, that claim is 'to be determined exclusively by the arbitrator[].'"  <u>Id.</u> at 819 (emphasis added) (citation omitted).

Here, Respondents contend that enforcing the Arbitration Award would violate public policy because the underlying contract was a "predatory loan . . . disguised as a Revenue Purchase Agreement," and New York state law renders usurious loans void.  (Resps. Vac. Mem. at 2, 11-14.)  Although framed as a challenge to the <u>enforcement</u> of the Arbitration Award, this argument is, in effect, a challenge to the validity of the underlying <u>contract</u> as usurious.  This was an issue "to be determined exclusively by the arbitrator[]," who did consider and resolve it. (Award ¶ 23.)  Respondents' disagreement with the Arbitrator's factual findings or legal analysis is not a basis for vacatur of the Arbitration Award.  <u>Commodities & Mins. Enter. Ltd.</u>, 49 F.4th at 818 ("In reviewing an arbitral award for violations of public policy, a court may not revisit or question the fact-finding or the reasoning which produced the award." (internal quotation marks and citation omitted)).  The Motion to Vacate is therefore denied to the extent it is based on public policy.

<u>Manifest Disregard of the Law</u>

Respondents next contend that the Arbitration Award was made in manifest disregard of the law "because the arbitrator disregarded controlling authority that mandated a ruling [that] the parties' agreement was a loan since petitioner did not reconcile payments."

(Resps. Vac. Mem. at 15.)  Specifically, Respondents argue that controlling New York state

precedent concerning the enforcement of usurious loans "was brought to the Arbitrator's

attention in the motion for discovery, but in making the award, he ignored" it."  (<u>Id.</u>)

   In addition to applying the statutory grounds for vacatur under Section 10 of the

FAA, reviewing courts may vacate an arbitral award if it exhibits "a manifest disregard of law."

<u>Duferco Int'l Steel Trading</u>, 333 F.3d at 389.  This doctrine "is limited only to those exceedingly

rare instances where some egregious impropriety on the part of the arbitrators is apparent[.]"  <u>Id.</u>

A reviewing court may only vacate an award for manifest disregard of the law if it finds both that

"(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it

altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly

applicable to the case.'"  <u>Banco de Seguros del Estado v. Mut. Marine Off., Inc.</u>, 344 F.3d 255,

263 (2d Cir. 2003).

   Respondents misinterpret the first element required to establish manifest

disregard of the law.  As Petitioner notes, the Arbitrator relied on the case law proffered by

Respondents in their briefing before the Arbitrator and applied those legal principles to the facts

in reviewing Petitioner's asserted defense that the RPA was a "criminally usurious and

unenforceable" loan.  (Docket entry no. 13 ("Pet. Vac. Mem.") at 7-11; docket entry no. 9-15 at

5; Award ¶ 23.)  Respondents' disagreement with the Arbitrator's interpretation and application

of legal precedent is not sufficient to establish manifest disregard of law, nor is "[m]ere error in

the law or failure on the part of the arbitrator to understand or apply the law[.]"  <u>Yusuf Ahmed</u>

<u>Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.</u>, 126 F.3d 15, 23 (2d Cir. 1997) (internal

quotation marks and citation omitted).; <u>see</u> <u>also</u> <u>Barzelatto v. Spire Sec., LLC</u>, No. 19-CV-6238-

CM, 2019 WL 8889865, at *8 (S.D.N.Y. Nov. 5, 2019) ("[A] federal district court does not sit as

a court of appeals over an arbitration panel to correct errors of law.")  Accordingly, this argument for vacating the Arbitration Award is also unavailing.

Irrational Award

Respondents also assert, without citation to the record, the Arbitration Award, or pertinent case law, that "the award is irrational because the arbitrator made a new contract for the parties."  (Resps. Vac. Mem. at 15-16.)  This argument mischaracterizes the Arbitrator's decision.  Rather than "making a new contract for the parties," the Arbitrator credited Petitioner's allegations that the parties had entered into a "novated" agreement, noting that Respondents "had the opportunity" to rebut such allegations, "but opted not to do so." (Arbitration Award ¶¶ 11, 21.)

Moreover, because Respondents failed to challenge Petitioner's arguments concerning modification of the RPA before the Arbitrator, this issue is forfeited.  (See id.); Europcar Italia, S.P.A., 156 F.3d at 315 (2d Cir. 1998) (finding that issues not raised before arbitrator are waived in enforcement proceeding).

Exceeding Authority

Respondents' final argument, proffered in the alternative to their argument concerning the irrationality of the Arbitrator's purported "creation of a new contract for the parties," is that the Arbitrator's finding of a "novated" agreement deprived the Arbitrator of jurisdiction to hear the parties' dispute, because the Arbitrator did not find that "the new agreement included an agreement to arbitrate or a personal guaranty or that the personal guaranty and the agreement to arbitrate contained in the original agreement survived the purported novation."  (Resps. Vac. Mem. at 16-17.)  This argument is based on the fact that the Arbitrator repeatedly referred to the parties' agreement to "negate the reconciliation provision [of the RPA]

and agree to a weekly payment amount in the amount of $18,367" as a "novation," and to the modified RPA as a "novated agreement."  (See, e.g., Arbitration Award ¶¶ 11, 21, 23(f) n.2.)  As Respondents note, under New York State law, a novation generally results in the extinguishment of the original contract and the formation of a new contract, as opposed to a contract modification, which "results in the establishment of a new agreement between the parties which pro tanto supplants the affected provisions of the original agreement while leaving the balance of it intact."  Cappelli v. State Farm Mut. Auto. Ins. Co., 259 A.D.2d 581, 582 (N.Y. App. Div. 2d Dep't 1999) (emphasis added) (citations omitted); Wasserstrom v. Interstate Litho Corp., 495 N.Y.S.2d 217, 219 (N.Y. App. Div. 2nd Dep't 1985).  This final argument requires more careful consideration, but the Court nevertheless finds that it must be rejected.

Section 10(a)(4) of the FAA provides for vacatur "where the arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4) (Westlaw through P.L. 119-1).  The Second Circuit has "consistently accorded the narrowest of readings" to section 10(a)(4), finding that an arbitrator exceeds his or her authority only by (1) "considering issues beyond those the parties have submitted for . . .  consideration," or (2) "reaching issues clearly prohibited by law or by the terms of the parties' agreement."  Jock v. Sterling Jewelers Inc., 646 F.3d 113, 122 (2d Cir. 2011).  As discussed above, the scope of review on a petition to confirm or vacate an arbitration award is extremely narrow—a "barely colorable justification" will suffice.  Id. (citations omitted); Leeward Constr. Co. v. Am. Univ. of Antigua, 826 F.3d 634, 640 (2d Cir. 2016).

Looking to the language and reasoning of the Arbitration Award, rather than the legal terminology used by the Arbitrator, it appears that, although the Arbitrator characterized the RPA's modification as a "novation," he described and applied the amended RPA in a manner that was more consistent with a contract modification.  Specifically, the Arbitrator described

Petitioner's arguments concerning breach by stating that Respondents' failure to remit and maintain funds necessary for the fixed weekly payment amount after June 2, 2023, "constitute[ed] a breach of the novated agreement, and by extension a breach of the Agreement." (Arbitration Award ¶ 11.)  If the Arbitrator had found the amendment of the RPA to be a novation as defined by New York state law, whereby the original agreement was voided and replaced, a breach of the amended agreement would not, as the Arbitrator asserted, have constituted a breach of the original RPA "by extension."  Moreover, the only effect of the parties' modification of the RPA that is identified by the Arbitrator in the Arbitration Award is the negation of the requirement for reconciliation (see, e.g., Arbitration Award ¶ 21, 23(f) n.2) and, most tellingly, the Arbitrator continued to interpret and apply provisions of the original RPA, including the 25 percent default fee, which would have been inappropriate if, as Respondents assert, the Arbitrator had found the original agreement to have been voided and replaced.  (See, e.g., id. ¶ 15 (following the narrative concerning the parties' amendment of the RPA, finding that the RPA contained an arbitration provision pursuant to which the dispute was submitted to the Arbitrator); id. ¶ 23 (examining various provisions of the RPA to determine whether it was a loan or revenue purchase agreement); id. ¶ 24 (finding the 25% default fee in the original RPA to be applicable).)  These facts indicate that the Arbitrator believed that, apart from the "negated" requirement for reconciliation, the remaining provisions of the original RPA, including the arbitration provision, continued to apply, supplying the requisite "barely colorable justification" for this Court to uphold the award.

Because the Court has found each of Respondents' arguments for vacatur to be meritless, Respondents' Motion to Vacate is denied, and the Court must, and does, grant Petitioner's petition to confirm the Arbitration Award, pursuant to Section 9 of the FAA.  See

AmeriCredit Fin. Servs. v. Oxford Mgmt. Servs., 627 F. Supp. 2d 85, 102 (E.D.N.Y. 2008)

("Upon the denial of a motion for vacatur, the Court must confirm an arbitration award."); see

also discussion supra pp. 11-13 (finding application of FAA standards to be appropriate in this

case).


CONCLUSION

For the foregoing reasons, (1) Petitioner's motion to remand this action to state

court is denied, (2) Respondents' motion to vacate the Arbitration Award is denied, and

(3) Petitioner's motion to confirm the January 19, 2024 Arbitration Award in the amount of

$360,540.08, along with Petitioner's costs of confirming the award and interest from January 19,

2024, to the date on which judgment is entered at the rate of nine percent per annum, is granted.

Post-judgment interest shall accrue in accordance with 28 U.S.C. section 1961.

The Clerk of Court is directed to enter judgment accordingly, close all pending

motions, and close this case.

SO ORDERED.

Dated: New York, New York
       March 24, 2025


/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge